UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
PRATIK PATEL, individually and as a
shareholder of PAN KING, Inc. d/b/a NY Chicken & Rice;
LALIT PATEL, individually and as a partner of
PAN KING, Inc. d/b/a NY Chicken & Rice

DOCKET#

2:21-cv-00759-JS-SIL

Plaintiffs,

-against-

NODDY SINGH, ARJUN SINGH, individually and as
shareholders of PAN KING, Inc. d/b/a NY Chicken & Rice

Defendants.
-------------------------------------------------------------------X

## DECLARATION OF NODDY SINGH IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NODDY SINGH, under penalty of perjury and in accordance with 28 U.S.C. § 1746, states and declares that the following is true and correct:

1. I am a defendant in this matter as well as was one of the shareholders of PAN KING, INC. ("KING" or the "Company") As such, I am fully familiar with the facts and circumstances surrounding this matter as set forth herein.

2. I respectfully submit this Declaration in support of Defendants' motion for an

Order, pursuant to F.R.C.P. Rule 56, granting Defendants' summary judgment dismissing Plaintiff, PRATIK PATEL's, ("Patel") complaint in its entirety.

3. By way of background prior to working at King, I was an owner and operator of Dehli 6 restaurant, it was at Dehli 6 where I first met Patel.
4. The company was incorporated on September 19, 2017 by Pratik Patel.
5. At the time of the incorporation a board of directors was not elected.
6. After Patel left we convened a meeting for shareholders on April 5, 2021 to elect a board of directors.
7. At the time Patel was employed he was solely responsible for maintaining records pertaining to his attendance and payroll at King.
8. Patel was in charge of scheduling and payroll, he would keep track of hours by accessing the POS system for which he had the master administration password.
9. At the time Patel was employed he had full access to the register and took his pay in both cash and check.
10. Patel wanted to take cash because he said "I gave cash for the investment and I want cash back."
11. Patel trained several employees, he was the sole shift manager during his shift and worked independently making decisions about inventory, staffing, scheduling payroll, hiring, firing employees, dealing with vendors, cashing out the register.
12. All employees were trained by Patel including front and back staff. Asish Valvekar- front staff, Veronica- front staff, Sidhant-front, Hallema-front, Kaleem Ur Rehman- kitchen, and Raj-kitchen were all trained and directed by Patel.
13. Patel was an executive employee since he was holding 25% of the shares.
14. Patel agreed to the salary he was given and shared in the tips as additional

compensation.

15. Patel was paid a fixed predetermined salary of $650 per week, he was paid a combination of cash and check. Patel took cash to compensate himself.
16. I along with my brother Arjun Singh came up with the concept, recipe, branding, location, negotiated lease terms, paid key money, money toward renovation and for the expansion. We were compensated at the same rate as Patel.
17. Patel never once sent any written complaints to me or Arjun about his rate of pay because he was in charge of his own salary.
18. Patel often set my schedule and told me which hours to come in for work at King.
19. Patel determined his own hours, sometimes telling us when he was not coming in, and other times volunteering to fill in if someone was unavailable.
20. Patel independently determined how he performed his job with no oversight, he was not directly supervised by anyone.
21. He agreed to work a minimum of 48 hours but often would leave abruptly.
22. He went on a trip to India in July of 2019 without giving us much of a choice, he pretty much told us he had to go without even telling us why.
23. He left permanently in January of 2020 without any written notice. We asked him to return but he refused because he said was not living in New York and the business was not making enough money for him.
24. After he left the business incurred more debt because we had to find a replacement for Patel's shift.
25. After Patel left, I had to invest another $40,000. He left King in debt for everything. PSEG, $8,000; National Grid, $6,000; rent, $6,000, payroll four weeks due, inventory for store, lease termination, 6 Jerusalem Avenue, and construction cost.

26. Patel has made claims of labor law violations but he was responsible for keeping his payroll records and did take his own salary.
27. There has been no violation of the labor law as Federal Labor Standards Act makes exemptions for bona fide exempt executive who owns more than 20% of shares and also for executives who meet certain salary and work requirements.
28. Executive and Administrative employees are exempt from State Labor Law (Section 651) claims.
29. New York exempts bona fide executive employees from its minimum wage and overtime requirements. NY Labor Law 651(5)(b).
30. I understand that Patel has not brought any federal claims although he decided to file suit in federal court, this court should refrain from exercising authority over state law claims since federal claims were not made.
31. I understand that Patel did not bring federal labor law claims because those claims would be exempt since he is a bona fide exempt executive who owns more than 20% of shares.
32. Patel did not make these frivolous complaints as part of his original complaint but waited several years before amending his complaint.
33. I execute this declaration based upon information and belief, based upon my personal knowledge and review of documents pertaining to this matter.

July 16, 2023

_____
Noddy Singh