UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PRATIK PATEL, individually and as a
shareholder of PAN KING, Inc. d/b/a NY Chicken & Rice,          Case 2:21-cv-00759-HG-LGD

                                    Plaintiff(s),
            -against-
NODDY SINGH; ARJAN SINGH, individually and as
shareholders of PAN KING, Inc. d/b/a NY Chicken & Rice,

                                    Defendants.
------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR BREACH OF FIDUCIARY DUTY AND VIOLATIONS OF THE NEW YORK LABOR LAW**

1

**Table of Contents**

**I.    PRELIMINARY STATEMENT AND STATEMENT OF FACTS**................................... 4

**II.   STANDARD APPLICABLE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**........................................................................................................... 5

**III.  ARGUMENT**.......................................................................................................... 7

A.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM BECAUSE (1) DEFENDANTS USURPED A CORPORATE OPPORTUNITY FOR THE BENEFIT OF DEFENDANTS; (2) DEFENDANTS COMMINGLED THE CORPORATION'S FUNDS WITH THEIR OWN; AND (3) DEFENDANTS CAUSED THE CORPORATION TO BECOME UNDERCAPITALIZED AND RELIANT ON DEBTS TO SURVIVE. ...................................................................................... 7

    *i.    Defendants Usurped a Corporate Opportunity for the Benefit of Defendants* .............. 8

    *ii.   Defendants Commingled the Corporation's Funds with their Own* ............................ 11

    *iii.  Defendants caused the Corporation to become Undercapitalized and Reliant on Debts to Survive.* ................................................................................................................ 12

B.    PLAINTIFFS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL BREACH OF FIDUCIARY CLAIM BECAUSE DEFENDANTS DID NOT DISCLOSE TO PLAINTIFF THAT THEY APPLIED FOR LOANS OR RECEIVED LOAN PROCEEDS ON BEHALF OF PAN KING. .................................... 13

C.    PLAINTIFFS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CONVERSION CLAIM BECAUSE DEFENDANTS EXERCISED UNAUTHORIZED CONTROL OVER THE CORPORATE LOAN PROCEEDS AND CONVERTED THE CORPORATE ASSET FOR THEIR OWN USE. ............................ 15

D.    PLAINTIFFS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NEW YORK LABOR LAW ("NYLL") MINIMUM WAGE, OVERTIME, AND RECORDKEEPING CLAIMS BECAUSE DEFENDANTS CONTROLLED PAN KING, PAN KING WAS PLAINTIFF'S EMPLOYER, AND DEFENDANTS DID NOT PAY PLAINTIFF PURSUANT TO THE LAW. ............................................... 16

    *i.    Pan King was Plaintiff's Employer* ................................................................... 16

    *ii.   Plaintiff was not paid the Minimum Wage or Overtime Wages Mandated by the New York Labor Law.* ........................................................................................................... 19

    *iii.  Defendants did not Comply with Recordkeeping Requirements.* .................................. 20

## TABLE OF AUTHORTIES

### CASES

. *Burks v. Lasker,* 441 U.S. 471, 486, 99 S. Ct. 1831, 1841, 60 L. Ed. 2d 404 (1979)  7

*Benex LC v First Data Merchant Services Corp.*, 14-CV-6393 (JS) (AKT), 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016).  14, 15

*Berrios v. Nicolas Zito Racing Stable, Inc.,* 849 F.Supp. 2d 372, 380 (E.D.N.Y. 2012)  20

*Burg v. Horn,* 380 F.2d 897, 899 (2d Cir.1967)  8

*Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 449–50, 123 S. Ct. 1673, 1680, 155 L. Ed. 2d 615 (2003),  16

*Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 671–72 (S.D.N.Y. 2005), aff'd sub nom.  8, 9

*Digital Camera Intl., Ltd. v. Antebi,* 11 CV 1823 (SJ), 2017 WL 2992719, at *3 (EDNY July 14, 2017); 7, 13, 14

*Drozd v. Vlaval Constr., Inc.,* No. 09 CV 5122 SJ, 2011 WL 9192036, at *13 (E.D.N.Y. Oct. 18, 2011)20, 21

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015)  16, 18

*Guenther v. Modern Cont'l Cos.,* 561 F.Supp. 2d 317, 321 (E.D.N.Y. 2008)  6

*Ho v. Target Constr. of NY, Corp.*, No. 08-CV-4750 (KAM)(RER), 2011 WL 113150, at *2-3 (E.D.N.Y. Mar. 28, 2011).  20

*Horan v. Vieira,* No. 18CV01286JMAST, 2021 WL 1200220, at *4 (E.D.N.Y. Mar. 12, 2021), report and recommendation adopted, No. 18CV1286JMAST, 2021 WL 1193146 (E.D.N.Y. Mar. 30, 2021)  6

*Jiaxing Globallion Imp. & Exp. Co. v. Argington, Inc.*, No. 11-CV-6291, 2014 WL 1478864, at *3 (E.D.N.Y. Apr. 15, 2014)  10, 11, 12

*Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)  7, 13, 14

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006)  10

*Lyons v. Lancer Insurance Co.,* 681 F.3d 50, 57 (2d Cir. 2012).  6

*Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984)  7

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 310 (E.D.N.Y. 2009)  19

*Reyes-Fana v. Moca Grocery NY Corp.,* No. 21CV4493AMDRER, 2022 WL 5428688, at *15 (E.D.N.Y. Aug. 16, 2022), report and recommendation adopted, No. 21CV4493AMDRER, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022)  20

*Sevilla v. House of Salads One LLC,* No. 20CV6072PKCCLP, 2022 WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022).  16, 17

*Strass v. Costco Wholesale Corp.*, No. 14CV06924PKCVMS, 2016 WL 3448578, at *2 (E.D.N.Y. June 17, 2016)  6

*United States v Siegel,* 717 F2d 9, 14 [2d Cir 1983].  8, 13, 14

*United States v. Bronston,* 658 F.2d at 928.  13, 14

### STATUTES

N.Y. Lab. Law § 195 (McKinney).  19

N.Y. Lab. Law § 195(4)  19

N.Y. Lab. Law § 198 (McKinney).  20

N.Y. Lab. Law § 232 (McKinney).  18

N.Y. Lab. Law § 652 (McKinney).  18, 21, 22

N.Y.C.R.R. § 146-2.1 (2011)  19

3

## I.   PRELIMINARY STATEMENT AND STATEMENT OF FACTS

Plaintiff and Defendants entered into a shareholder's agreement whereby Plaintiff would be the owner of 25% of shares in Pan King, Inc., a halal chicken and rice restaurant (hereinafter "Pan King"). Defendants each owned 37.5% of shares. (**ECF # 57, Exhibit 1** – Partnership Agreement). Plaintiff also agreed to work at least forty-eight hours per week, but agreed to no other terms of employment. *Id.* Plaintiff began working at the restaurant in December 2017 and Plaintiff reported to Defendants and referred to their business judgment for what to do in various contexts. *See* **Exhibit 2** – P. Patel Dep. at 14:1-5; *See generally* **Exhibit 3** – Text Excerpts. Plaintiff always worked at least forty-eight hours per week, except for one week in August of 2019. **Exhibit 2** – P. Patel Dep.  at 95:1-11.

In fact, most weeks, Plaintiff worked 10:00 am through 8:00 pm, or twelve hours per day, six days per week, for a total of seventy-two hours per week. **Exhibit 2** – P. Patel Dep. at 15:12-25, 15:1-10; 51:15-19. Plaintiff did not get paid a salary for the first three or four months, but Defendants eventually agreed to pay Plaintiff between $400 and $550 per week. **Exhibit 2** – P. Patel Dep. at 150:1-23; 47:23-25, 48: 1-5. However, Plaintiff did not always receive his agreed-upon salary, as Defendants have compiled a list of payments made to Plaintiff, some of which are well below $400. **Exhibit 4** – Payment Compilation. Plaintiff also worked with Defendants to create the work schedule, but Defendants would typically make changes to the schedule and provide their final approval. *See* **Exhibit 3** – Text Excerpts. Plaintiff was always given his salary by either Noddy Singh or Arjun Singh and did not issue his own salary. **Exhibit 2** – P. Patel Dep. at 151:4-25. Eventually, Plaintiff could no longer afford to live on the salary Defendants were giving, Plaintiff saw no profit from his investment, and Plaintiff was moving out of state, so Plaintiff left his employment with the company in December of 2019. **Exhibit 2** – P. Patel Dep. at 175:16-25, 177:9-16.

4

After Plaintiff left his employment with Pan King, Plaintiff remained a shareholder. During this time, Defendants had taken out an Economic Injury Disaster Loan and a PPP loan in the name of Pan King without consulting with or even informing Plaintiff. **Exhibit 5** – EIDL Application; **Exhibit 6** – PPP Loan Application; **Exhibit 7** – EIDL Amended Loan Modification. Plaintiff never received any proceeds from this loan, even though Plaintiff provided an initial investment of $50,000 in the company and had been underpaid throughout the entirety of his employment with Pan King. **ECF # 57, Exhibit 1 –** Partnership Agreement; **Exhibit 4** – Payment Compilation; **Exhibit 2** – P. Patel Dep. at 177:14-16, 200:14-15. Later, Plaintiff discovered that Defendants wrote checks to themselves for the loan proceeds. **Exhibit 8** – Check Labeled "Loan Return." Plaintiff also discovered evidence of commingling funds, as personal expenses such as Facebook and PlayStation purchases were charged to Pan King's corporate checking account. **Exhibit 9** – Personal Expenses. It became clear that Pan King was heavily reliant on debts to survive, and even the loan proceeds were misappropriated by Defendants.

Plaintiff then brought this lawsuit for breach of contract, individual breach of fiduciary duty, derivative breach of fiduciary duty owed to the corporation, conversion, and New York Labor Law (hereinafter "NYLL") violations. The parties commenced discovery, and now Plaintiff moves for partial summary judgment on Plaintiff's individual breach of fiduciary duty, derivative breach of fiduciary duty, conversion, and NYLL Minimum Wage, Overtime, and Recordkeeping claims.

## II.   STANDARD APPLICABLE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On a motion for summary judgment, "[t]he moving party bears the initial burden of establishing that there are no genuine issues of material fact . . . once such a showing is made,

the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.' "

*Horan v. Vieira,* No. 18CV01286JMAST, 2021 WL 1200220, at *4 (E.D.N.Y. Mar. 12, 2021),

report and recommendation adopted, No. 18CV1286JMAST, 2021 WL 1193146 (E.D.N.Y. Mar.

30, 2021) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations

omitted). "To overcome a motion for summary judgment, the opposing party must show that

there is an issue of material fact in dispute. That is, the disputed fact must be one which 'might

affect the outcome of the suit under the governing law." *Guenther v. Modern Cont'l Cos.,* 561

F.Supp. 2d 317, 321 (E.D.N.Y. 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

248 (1986)). The opposing party may not rely on mere allegations or denials to defeat a motion

for summary judgment. *Lyons v. Lancer Insurance Co.,* 681 F.3d 50, 57 (2d Cir. 2012).

Sufficient and probative evidence must be presented such that a rational trier of fact could find

for the non-movant. *See Id.*

        "Summary judgment is appropriate where a reasonable juror could not find for the non-

moving party considering 'the record taken as a whole." *Strass v. Costco Wholesale Corp.*, No.

14CV06924PKCVMS, 2016 WL 3448578, at *2 (E.D.N.Y. June 17, 2016) (citing *Donnelly v.

Greenburgh Cent. Sch. Dist. No. 7,* 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "Summary judgment is also proper

where 'after adequate time for discovery and upon motion ... a party ... fails to make a showing

sufficient to establish the existence of an element essential to that party's case, on which that

party will bear the burden of proof at trial.'" *Id (*citing *Celotex*, 477 U.S. at 322-23).

6

## III.   ARGUMENT

a. **Plaintiff is Entitled to Summary Judgment on Plaintiff's Breach of Fiduciary Duty Claim because (1) Defendants Usurped a Corporate Opportunity for the Benefit of Defendants; (2) Defendants Commingled the Corporation's Funds with their Own; and (3) Defendants caused the Corporation to become Undercapitalized and Reliant on Debts to Survive.**

"'Corporations are creatures of state law' and federal courts should apply state law when deciding the authority of corporate directors, to the extent such law is consistent with applicable federal law. *Burks v. Lasker,* 441 U.S. 471, 486, 99 S. Ct. 1831, 1841, 60 L. Ed. 2d 404 (1979) (citing *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977); *Cort v. Ash,* 422 U.S. 66, 84, 95 S.Ct. 2080, 2091, 45 L.Ed.2d 26 (1975)).

The elements of breach of fiduciary duty are "(1) the existence of a fiduciary relationship; (2) the breach of a duty imposed by that relationship; and (3) harm." *Digital Camera Intl., Ltd. v. Antebi,* 11 CV 1823 (SJ), 2017 WL 2992719, at *3 (EDNY July 14, 2017); *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld,* 64 A.D.3d 736, 883 N.Y.S.2d 305, 308 (2009)). "A board member's obligation to a corporation and its shareholders has two prongs, generally characterized as the duty of care and the duty of loyalty. The duty of care refers to the responsibility of a corporate fiduciary to exercise, in the performance of his tasks, the care that a reasonably prudent person in a similar position would use under similar circumstances." *Norlin Corp. v. Rooney, Pace Inc*., 744 F.2d 255, 264 (2d Cir. 1984) (citing *Auerbach v. Bennett,* 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 926, 393 N.E.2d 994 (1979)). Instances where corporate officers have been found in breach of their fiduciary duty to act in the best interest of the corporation include the corporate opportunity doctrine, commingling of corporate and personal funds, and resulting undercapitalization.

7

### i.    Defendants Usurped a Corporate Opportunity for the Benefit of Defendants

"Under the doctrine of corporate opportunity, 'corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation.'" *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 671–72 (S.D.N.Y. 2005), aff'd sub nom. The Doctrine of Corporate Opportunity applies in one of two different contexts: first, if it can be shown the corporation has an interest or 'tangible expectancy' in a given opportunity that is usurped from the corporation, and second, if a given opportunity is so necessary or essential to the corporation that the deprivation of said opportunity "threaten[s] the viability of the enterprise." *Id* (citing *Alexander & Alexander of New York, Inc. v. Fritzen,* 147 A.D.2d 241, 542 N.Y.S.2d 530, 533 (1st Dep't 1989) (citations omitted); *Burg v. Horn,* 380 F.2d 897, 899 (2d Cir.1967) (citations omitted)).

In *United States v Siegel,* the Court found that, based upon testimony in the record, a reasonable jury could have found that the Defendant officers participated in cash sales, failed to record the sales, pocketed the proceeds from the cash sales, and used the proceeds for non-corporate purposes. *United States v Siegel,* 717 F2d 9, 14 [2d Cir 1983]. Accordingly, the Second circuit held that the officers breached their fiduciary duty of care "to act in the best interest of the corporation. . . ." *Id.* In *Siegal,* there was "little, if any, direct evidence" to show where precisely the funds went, however, "the record as a whole . . . support[ed] the determination that [the corporate directors] used the money for their own enrichment." *Id* at 15. "There was testimony which showed that [the corporate directors] personally received the proceeds from the cash sales and either pocketed them or placed them in the corporate safe deposit box" and testimony only accounted for approximately $31,000 of "sales generated in excess of $100,000." *Id.*

Here, the Defendants breached their fiduciary duty to act in the best interest of the corporation when they applied for Economic Injury Disaster Loans (hereinafter "EIDL") from the Small Business Administration and usurped the proceeds of the loans for themselves. Defendants applied for an EIDL loan on behalf of Pan King, Inc. **Exhibit 5** – EIDL Application. Though Plaintiff owned of 25% of shares, Noddy Singh and Arjun Singh were fraudulently listed as each owning 50% of shares. *Id.* The loan application shows that Pan King had an interest and reasonable expectancy in the proceeds of the loan, as Defendants applied for the loan on behalf of Pan King, Inc. and the proceeds of the loan were disbursed to Pan King's bank account. **Exhibit 16** – Loan Deposit to Pan King; *Design Strategies, Inc.*, 384 F. Supp. 2d 649 at 671–72.

Additionally, unlike in *Siegal* where there was little direct evidence to establish where the misappropriated cash funds went, the evidence here shows exactly where the loan proceeds ended up: shortly after the proceeds of the loan were dispersed, a check for $100,000 was written from Pan King's bank account to Arjun Singh personally. **Exhibit 8 –** Check Labeled "Loan Return." Additionally, Defendants admitted in depositions that the $100,000 check was used for the benefit of another business that Defendants owned, that Plaintiff had no interest in, Bros Chicken & Rice. **Exhibit 14** – A. Singh Dep. at 111:1-25; 112:1-22; 115:4-18.

Moreover, Noddy Singh and Arjun Singh requested to modify Pan King's EIDL loan from $120,000 to the maximum amount of $287,400; this application was also made on behalf of Pan King, Inc. **Exhibit 7** – EIDL Amended Loan Modification & Agreement. Presumably, the proceeds of this loan increase were released around March 8, 2022, the effective date of the Amended Loan Modification. *Id.* Thereafter, in April of 2022, a check for $20,000 labeled "loan" was written from Pan King's bank account to "TD Ameritrade FBO Noddy Singh." **Exhibit 10** – Check to TD Ameritrade. Another check for $1,000 was written to Arjun Singh

9

personally, and another for $9,500 was written to Noddy Singh personally. **Exhibit 11** – April 2022 Checks. In May of 2022, a check for $2,900 labeled "salary" was written from Pan King's bank account to Noddy Singh and deposited into Noddy Singh's personal bank account. **Exhibit 12** – May 2022 Check. Also in May of 2022, a check for $19,500 labeled "loan" was written from Pan King's bank account to Noddy Singh personally. **Exhibit 13** – May 2022 Check "Loan." These transactions are all undisputed evidence showing that Defendants usurped corporate opportunities, proceeds of government loans meant to help the corporation survive, for their sole use and benefit.

ii.     **Defendants Commingled the Corporation's Funds with their Own**

Here, Defendants also breached their fiduciary duty by commingling the Corporation's funds with their personal expenses. In the context of an attorney's breach of fiduciary duty, the Second Circuit found that "[the fiduciary's] commingling of funds was not only an *indication* of a breach of fiduciary duty—it was, in and of itself, a breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006).  In *Jiaxing Globallion Imp. & Exp. Co. v. Argington, Inc.*, the Court found the following:

> "Defendants breached their duty by commingling the corporation's funds with their own . . . QuickBooks data demonstrates that the company paid Thornton's and Argie's personal expenses and obligations. These payments are classified as "Personal" in QuickBooks. . . They made personal cash withdrawals and payments for personal effects to Costco, Crate & Barrel, Home Depot, Hunter Mountain Ski Bowl, IKEA, Key Foods, Prospect Park Tennis, and Target.. .  QuickBooks also shows that corporate funds were used to pay defendants' personal debts . . . as well as personal obligations for home mortgage payments.``

*Jiaxing Globallion Imp. & Exp. Co. v. Argington, Inc.*, No. 11-CV-6291, 2014 WL 1478864, at *3 (E.D.N.Y. Apr. 15, 2014) (internal citations omitted).

Throughout the final years that Pan King was operating and even afterward, Defendants wrote themselves many checks amounting to $1,000 or more: For example, In April of 2022, a

10

check for $20,000 labeled "loan" was written from Pan King's bank account to "TD Ameritrade FBO Noddy Singh." Another check for $1,000 was written to Arjun Singh personally, and another for $9,500 was written to Noddy Singh personally. **Exhibit 10** – Check to TD Ameritrade; **Exhibit 11 –** April 2022 Checks. In May of 2022, a check for $2,900 labeled "salary" was written to Noddy Singh from Pan King's account, and was deposited into the personal checking account of Arjun and Noddy Singh. **Exhibit 12** – May 2022 Check. Defendants also seemingly used Pan King's corporate account for personal expenses such as convenience store stops and Facebook and video game purchases. For example, Pan King's January 2020 bank statement shows purchases at 7-Eleven, Applegreen Gas, Facebook, PlayStation Network, and even a recurring charge for Geico Auto Insurance. **Exhibit 9** – Personal Expenses. These transactions are very similar to the personal expenses charged to the corporate account referenced in *Jiaxing Globallion Imp. & Exp. Co.* No. 11-CV-6291, 2014 WL 1478864, at *3. These are also only a few of the personal expenses charged to Pan King's account throughout the entirety of Pan King's operation. This improper commingling of funds shows that Defendants were not acting in the best interest of the corporation, but that Defendants' first priority was to pay themselves and to pay their own personal expenses to the detriment of the corporation.

    iii.    **Defendants caused the Corporation to become Undercapitalized and Reliant on Debts to Survive.**

In, *Jiaxing Globallion Imp. & Exp. Co.*, the corporation at issue was undercapitalized because of Defendants' personal use of corporate assets, "lacked sufficient owners' capital" and "heavily relied on debts to survive." No. 11-CV-6291, 2014 WL 1478864, at *3 (internal citations omitted). Meanwhile, "the shareholders disbursed $554,526 from the corporation to

themselves. This movement of assets demonstrates that defendants' priority was paying their personal expenses and not the corporation's outstanding liabilities." *Id.*

The evidence referenced above, namely the misappropriation of corporate loan funds and intermingling personal expenses with corporate expenses, resulted in the corporation being undercapitalized and heavily reliant on debts to survive: Defendants applied for and received a PPP loan in May of 2020 for the maximum amount allotted, $7,597.00. **Exhibit 6. –** PPP Application. Defendants also took out an EIDL loan and took the funds for themselves, leaving the corporation penniless.  *See* **Exhibit 5** – EIDL Application; **Exhibit 8** – Check Labeled "Loan Return." Then, Defendants even applied for a loan increase on behalf of Pan King when Pan King was no longer operating or serving customers in any capacity. **Exhibit 14** – A. Singh Dep at  75: 1-8; **Exhibit 7** – EIDL Amended Loan Modification. While taking out loans due to heavy undercapitalization, Defendants continued to write personal checks to themselves, "demonstrating defendants' priority was paying their personal expenses and not the corporation's outstanding liabilities." *Jiaxing Globallion Imp. & Exp. Co.*, No. 11-CV-6291, 2014 WL 1478864, at *3.

In sum, Defendants breached their fiduciary duties of care and loyalty to the Pan King by commingling corporate funds with their personal expenses throughout the entirety of Pan King's operations, misappropriating loan proceeds that rightfully belonged to Pan King, and using the proceeds for themselves or their other business, Bros Chicken and Rice, Inc. This is a clear violation of Defendants' obligations to act in the best interest of Pan King and to avoid taking personal advantage of corporate opportunities that belonged to Pan King.

**b. Plaintiffs is Entitled to Summary Judgment on Plaintiff's Individual Breach of Fiduciary Claim because Defendants did not Disclose to Plaintiff that they Applied for Loans or Received Loan Proceeds on Behalf of Pan King.**

The elements of breach of fiduciary duty are "(1) the existence of a fiduciary relationship; (2) the breach of a duty imposed by that relationship; and (3) harm." *Digital Camera Intl., Ltd. v Antebi,* 11 CV 1823 (SJ), 2017 WL 2992719, at *3 (EDNY July 14, 2017); *Johnson*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld,* 64 A.D.3d 736, 883 N.Y.S.2d 305, 308 (2009)).

In *United States v. Siegel,* the Second Circuit found that Defendants violated their fiduciary duty to disclose material information where there was sufficient evidence in the record that the Defendant officers participated in cash sales and failed "to apprise the non-participating employees and shareholders of the transactions." 717 F2d 9 at 14. "[F]ailure to reveal the misappropriation violated defendants' fiduciary duty to disclose material information." *See United States v. Bronston,* 658 F.2d at 928.

Here, Defendants violated their individual fiduciary duties owed to Plaintiff as the only other shareholder in the corporation, when they failed to disclose that (1) Pan King had several other bank accounts Plaintiff was not aware of; and (2) Pan King was applying for and receiving government loans. Firstly, Plaintiff was not aware of any of Pan King's bank accounts other than one, Account "6126." **Exhibit 15 –** Pan King Signature Cards. This information was material because Pan King's banking activity was hidden from the Plaintiff so that he would not discover Defendants' misappropriations. Second, Plaintiff was not listed on the application as an owner, was not listed as an owner on the subsequent loan modification, and was not informed that the loans were approved and disbursed. **Exhibit 5** – EIDL Application; **Exhibit 7 –** EIDL Amended Loan Modification. Plaintiff was obviously not informed that the funds were transferred into the

13

Defendants' personal account. This information was material because Plaintiff invested in the corporation in exchange for his 25% ownership, but saw absolutely no return from that investment. **Exhibit 2** – P. Patel Dep. at 177:9-16. There was harm caused by the breach, because Plaintiff saw no portion of the loan proceeds or the modification, whereas Defendants did receive a return from their investment, the loan proceeds improperly placed in their personal accounts. **Exhibit 8; Exhibit 10; Exhibit 11; Exhibit 12; Exhibit 13**.

Plaintiff had a right to be informed of the EIDL loan and modification, so that Plaintiff and Defendants could properly account to the corporation and if any proceeds were left, to one another and disperse the leftover proceeds equitably amongst all shareholders. *See Digital Camera Intl., Ltd.,* 11 CV 1823 (SJ), 2017 WL 2992719, at *3; *Johnson* , 660 F.3d 131 at 138; *Siegel,* 717 F2d 9 at 14; *United States v. Bronston,* 658 F.2d at 928. Plaintiff was deprived of his right to this information and asks this Court to hold Defendants liable for breaching their fiduciary duty to Plaintiff by failing to disclose material information.

c. **Plaintiffs is Entitled to Summary Judgment on Plaintiff's Conversion Claim because Defendants Exercised Unauthorized Control over the Corporate Loan Proceeds and Converted the Corporate Asset for their Own Use.**

The elements of conversion are that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Benex LC v First Data Merchant Services Corp.*, 14-CV-6393 (JS) (AKT), 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016).

14

Here, the property subject to conversion is specific and identifiable: the EIDL Loan and EIDL Modification, and PPP Loan proceeds. Pan King had ownership and control of the EIDL Loan proceeds before the conversion, as the applications for all loans were made in the name of Pan King, the SBA agreed to release those funds to Pan King, and the SBA deposited the EIDL funds directly into Pan King's bank account. **Exhibit 16** – Loan Deposit to Pan King; **Exhibit 5 –** EIDL Application; **Exhibit 7** – EIDL Amended Loan Modification; **Exhibit 6 –** PPP Loan Application. Defendants exercised unauthorized dominion over the loan proceeds when they wrote checks to themselves from Pan King's bank account, thereby excluding Pan King from using those much needed funds. **Exhibit 8** – Check Labeled "Loan Return;" **Exhibit 10 –** Check to TD Ameritrade; **Exhibit 13 –** May 2022 Check Labeled "Loan." Accordingly, all of the elements of conversion are established, and Plaintiff requests this Court grant summary judgment against Defendants on Plaintiff's conversion claim. Benex LC, 14-CV-6393 (JS) (AKT), 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016).

### d. Plaintiffs is Entitled to Summary Judgment on Plaintiff's New York Labor Law ("NYLL") Minimum Wage, Overtime, and Recordkeeping Claims because Defendants Controlled Pan King, Pan King was Plaintiff's Employer, and Defendants did not Pay Plaintiff Pursuant to the Law.

Finally, summary judgment should be granted on Plaintiff's NYLL minimum wage, overtime, and recordkeeping claims because Defendants controlled Pan King, Pan King and Plaintiff had an employment relationship, Defendants failed to pay Plaintiff the minimum wage and overtime required by New York Law, and Defendants failed to keep employment records.

### i.     Pan King was Plaintiff's Employer

According to the Supreme Court, "[t]he mere fact that a person has a particular title— such as partner, director, or vice president—should not necessarily be used to determine whether

15

he or she is an employee or a proprietor". *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 449–50, 123 S. Ct. 1673, 1680, 155 L. Ed. 2d 615 (2003), In *Clackamas*, the Supreme Court was persuaded by the Equal Employment Opportunity Commission's analysis of six factors in whether a shareholder director is an employee:

> (1)" 'Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;' (2). 'Whether and, if so, to what extent the organization supervises the individual's work;' (3) 'Whether the individual reports to someone higher in the organization;' (4) 'Whether and, if so, to what extent the individual is able to influence the organization;' (5) 'Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;' (6) 'Whether the individual shares in the profits, losses, and liabilities of the organization.' " (internal citations omitted).

*Id.* Similarly, the New York Labor Law focuses on a touchstone of control test and considers the following factors: "whether the worker (1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (citing *Bynog,* 1 N.Y.3d at 198, 770 N.Y.S.2d 692, 802 N.E.2d at 1090). The Court also found that "as a practical matter" there was no freedom to engage in other employment when the Plaintiff was working between sixty and seventy-two hours per week. *Id.*

In *Sevilla v. House of Salads One LLC,* one Plaintiff was hired as a kitchen manager and food preparer and the Court found Defendants were Plaintiff's employers because "Defendants exercised control over the terms of Plaintiffs' employment by, among other things, having hiring and firing power over Plaintiffs, setting their work schedules, and determining the rate and method of their compensation." No. 20CV6072PKCCLP, 2022 WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022).

Here, firstly, Defendants have admitted Plaintiff was hired as an employee of Pan King. Like *Sevilla,* Defendants hired Plaintiff as the kitchen manager. No. 20CV6072PKCCLP, 2022

16

WL 954740, at *5. Defendants had control over Plaintiff's employment because although Plaintiff did work to create the weekly schedule for other employees, Plaintiff's hours were fixed, he generally did not determine his own schedule, and Defendants had the final authority to approve or disapprove the schedule and the hours Plaintiff worked. **Exhibit 3** – Text Excerpts. Plaintiff had to ask Defendants for a salary and the Defendants provided final approval of the amount. **Exhibit 2** – P. Patel Dep. at 150:7-23. wDefendants also always gave Plaintiff his weekly salary, Plaintiff did not give himself a salary. *Id* at 151:4-25. 46:1-5. *Sevilla*, No. 20CV6072PKCCLP, 2022 WL 954740, at *5.

Turning to the EEOC factors, Defendants also controlled Plaintiff's employment by hiring him and intended for Plaintiff to be an employee, as set forth in the Partnership Agreement making Plaintiff work at least forty-eight hours per week. **Exhibit 1 –** Partnership Agreement. Defendants also frequently instructed Plaintiff, telling him what to do in various contexts. *See generally* **Exhibit 3 –** Text Excerpts. Plaintiff reported to Defendants and had very little influence over the organization. *Id.* Finally, Plaintiff was not given the opportunity to participate in the profits, losses, and liabilities of the corporation, as shown *supra* by Defendant's exclusion of Plaintiff from several corporate bank accounts, loan disbursements, or any corporate books and records, whatsoever. All of these factors tend to show that Plaintiff and Defendants had an employment relationship, with Defendants exercising control over Plaintiff's employment.

Turning now to the New York touchstone of control test, Plaintiff did not work at his own convenience. While Plaintiff did work to create the weekly schedule, Defendants approved of this schedule and made changes to it, telling Plaintiff when he needed to work. Plaintiff was not permitted to arrive and leave work "whenever he liked or take breaks at his pleasure." *Fermin,* 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (citing *Sellers v. Royal Bank of Canada,* No. 12

Civ. 1577(KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014)). As a practical matter, Plaintiff was not free to seek other employment because he was required to work at least forty-eight hours for Defendants and always worked many more. *Id* at 34. **Exhibit 1 –** Partnership Agreement; **Exhibit 2** – P. Patel Dep. at  14:12-18; 51: 15-19. Plaintiff did not receive fringe benefits, was on Pan King's payroll, and worked a fixed schedule. P. Patel Dep at 51: 15-19. All of these factors weigh in favor of an employment relationship between Plaintiff and Defendants.

      ii.      **Plaintiff was not paid the Minimum Wage or Overtime Wages Mandated by the New York Labor Law.**

The New York Labor Law requires that "[e]very employer shall pay to each of its employees for each hour worked in the counties of Nassau, Suffolk and Westchester a wage not less than: $11.00 per hour on and after December 31, 2017, $12.00 per hour on and after December 31, 2018." N.Y. Lab. Law § 652 (McKinney).

Pursuant to § 232 of the New York Labor Law, "An employee. . . . who works more than eight hours in any one day or more than forty hours in any workweek shall be paid wages for such overtime at a rate not less than one-and-one-half times his prevailing basic cash hourly rate." N.Y. Lab. Law § 232 (McKinney). " Unlike . . . plaintiffs, who attempted to prove that they worked more than forty hours a week by referencing several small uncompensated tasks which, when added up, arguably took them over forty hours of work in a given week, Mr. Fermin's allegations demonstrate the complained-of overtime without the need for any inference because his set schedule exceeded forty working hours per week." *Fermin,* 93 F. Supp. 3d 19 at. 45. Similar to federal law, "[w]here an employee is unlawfully paid less than the minimum wage, the overtime calculation must be based on the minimum wage to which he was entitled." *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 310 (E.D.N.Y. 2009) (quoting Chan, 2007 WL 313483, at *23).

18

Here, it is undisputed that Plaintiff was not paid the minimum wage or overtime required by the New York Labor Law. Plaintiff worked six days per week. Exhibit 2 – P. Patel Dep. at 51: 15-19. At first, Plaintiff worked from 10:00 am until 8:00pm (twelve hours), but after approximately the first five months, Plaintiff's schedule changed from 3:00pm or 4:00pm until after midnight. *Id* at 14:12-18.This amounts to either twelve or eight to nine hours, six days per week. Plaintiff was being paid either between $200 and $550 per week, and some weeks he was not paid at all. **Exhibit 4** – Payment Compilation. It is undisputed these amounts do not constitute the minimum wage. *See* calculations, *infra.*

It is also undisputed that Plaintiff was not paid time and a half for work completed in excess of forty hours and was not given spread of hours pay, as all amounts that were paid to Plaintiff are represented in **Exhibit 4** – Payment Compilation. Accordingly, Defendants have violated the New York Labor Law and Plaintiff asks that summary judgment be granted on Plaintiff's NYLL minimum wage and overtime claims.

### iii.    Defendants did not Comply with Recordkeeping Requirements.

The New York Labor Law ("NYLL") imposes strict recordkeeping requirements on employers to ensure compliance with the minimum wage and overtime laws: "Every employer shall: . . . provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof . . . " *See* N.Y. Lab. Law § 195(4); 12 N.Y.C.R.R. § 146-2.1 (2011); N.Y. Lab. Law § 195 (McKinney).

Where an employer fails to meet its most basic recordkeeping requirements, in the absence of a rebuttal, the workers' recollection regarding their hours worked and wages owed must be presumed to be correct and damages based on those recollections should be awarded.

19

*Drozd v. Vlaval Constr., Inc.,* No. 09 CV 5122 SJ, 2011 WL 9192036, at \*13 (E.D.N.Y. Oct. 18, 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687- 688 (1946); Moon v. Kwon, 248 F.Supp. 2d 201, 219 (S.D.N.Y. 2002)); *see  Berrios v. Nicolas Zito Racing Stable, Inc.,* 849 F.Supp. 2d 372, 380 (E.D.N.Y. 2012) ; *Ho v. Target Constr. of NY, Corp.*, No. 08-CV-4750 (KAM)(RER), 2011 WL 113150, at \*2-3 (E.D.N.Y. Mar. 28, 2011).

Here, the complete schedule of payments also operates to show that Defendants did not keep employment records and did not provide Plaintiff any notice containing a rate of pay, because the schedule of payments was compiled after the commencement of this action, well after the term of Plaintiff's employment had ended. **Exhibit 4** – Payment Compilation. As such, Plaintiff asks that this motion for summary judgment on Plaintiff's recordkeeping claims be granted against Defendants.

The New York Labor Law allows for liquidated damages up to 300% of the uncompensated amount, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law. N.Y. Lab. Law § 198 (McKinney). Additionally, a prevailing party is "entitled to recover reasonable attorney's fees and costs" under the NYLL. *Reyes-Fana v. Moca Grocery NY Corp.,* No. 21CV4493AMDRER, 2022 WL 5428688, at \*15 (E.D.N.Y. Aug. 16, 2022), report and recommendation adopted, No. 21CV4493AMDRER, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022) (citing *Castro v. Hyper Structure Corp.*, No. 21-CV-01391 (ENV) (JRC), 2022 WL 2467242, at \*15 (E.D.N.Y. Mar. 7, 2022) (citing N.Y. Lab. Law §§ 198, 663(1))).

Given that proper employment records were not kept, approximations of hours to the best of Plaintiff's recollection must be presumed correct.  *Drozd,* No. 09 CV 5122 SJ, 2011 WL 9192036, at \*13. Plaintiff worked at the store from December 2017 through December of 2019.

P. Patel Dep. at 178:5-7. Plaintiff worked each week during that two year period, except for one week where he took a trip to India in August, 2019. *Id* at 95:1-4, 149:9-12. Plaintiff worked six days per week. *Id* at 51: 15-19. At first, Plaintiff worked from 10:00 am until 8:00pm (twelve hours), but after approximately the first five months, Plaintiff's schedule changed from 3:00pm or 4:00pm until after midnight. *Id* at 14:12-18.

The minimum wage after December 31, 2017 was $11 per hour for an employer with less than 10 employees. N.Y. Lab. Law § 652 (McKinney). For the first five months, or twenty weeks of Plaintiff's employment, he worked approximately twelve (12) hours per day, six days per week, for a total of seventy-two (72) hours per week. The minimum wage for Plaintiff's first forty hours would be $440 per week (40 hours x $11 per hour = $440 per week). For the remaining thirty-two hours, minimum wage, plus overtime is calculated at $528 per week (1.5 x $11 per hour = $16.50 x 32 hours = $528 per week). Thus, for the first five months, or twenty weeks of Plaintiff's employment in 2018, Plaintiff should have been paid $968 per week. Multiplied by twenty weeks, this amounts to $19,360 in wages.

For the remaining seven months,or twenty-eight weeks, of Plaintiff's employment in 2018, Plaintiff worked from 3:00pm or 4:00pm until after midnight (approximately nine hours), six days per week, for a total of approximately fifty-four (54) hours per week. The minimum wage for Plaintiff's first forty hours of work per week is $440. For the remaining 14 hours per week, minimum wage plus overtime is calculated at $231  (1.5 x $11 per hour = $16.50 x 14 hours = $231 per week). Thus, for the remaining twenty-eight weeks of Plaintiff's employment in 2018, Plaintiff should have been paid $671 per week. Multiplied by  twenty-eight weeks, this amounts to approximately $18,788 in wages.

21

During 2018, Plaintiff was owed, pursuant to the NYLL, a total of $38,148.00 in wages ($19,360 + $18,788). Plaintiff was paid a total of $9,150.00 in 2018, according to Defendants' calculations. **Exhibit 4 –** Payment Compilation. Accordingly, Plaintiff is owed **$28,998.00** in back wages and overtime wages.

During 2019, Plaintiff worked from 3:00pm or 4:00pm until after midnight (approximately nine hours), six days per week, for a total of approximately fifty-four (54) hours per week. Plaintiff ceased working for Pan King in December of 2019 and his last paycheck was on December 27, 2019 and took a one week vacation in August of 2019. Thus, Plaintiff worked approximately fifty of fifty-two weeks in 2019. The minimum wage in 2019 was $12 per hour. N.Y. Lab. Law § 652 (McKinney). For the first forty hours Plaintiff worked each week, Plaintiff should have been paid $480 ($12 per hour x 40 hours). For the remaining fourteen (14) hours per week that Plaintiff worked, Plaintiff should have been paid $252 per week (1.5 x $12 per hour = $18 per hour x 14 hours = $252). Plaintiff was owed a total of $732 per week in 2019 ($480 + $252). Multiplied by the approximately fifty weeks Plaintiff worked in 2019, Plaintiff should have been paid $36,600.00 ($732 x 50 weeks). Plaintiff was paid a total of $5,198.00 in 2019, according to Defendants' own calculations. **Exhibit 4** – Payment Compilation. Thus, Plaintiff is owed a total of **$31,402.00** in back wages and overtime wages for his work in 2019.

The total amount of back wages Plaintiff is owed for his work in 2018 and 2019 is **$60,400**. The New York Labor Law allows a Plaintiff to collect treble damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law. N.Y. Lab. Law § 198 (McKinney). Thus, in the absence of Defendants showing a good faith basis for believing they were in compliance with the law, Plaintiff is entitled to collect **$181,200.00** ($60,400 x 300%) in back wages, overtime, and damages.

## CONCLUSION

In sum, it is undisputed that Defendants breached their fiduciary duty to Pan King because Defendants usurped corporate opportunities for themselves by taking an EIDL business loan, writing checks to themselves personally for the proceeds of the loan, and using the proceeds of the loan for the benefit of another business. Defendants also breached their duty to the corporation by commingling personal and corporate expenses, using Pan King's card to pay for gas, Facebook, and PlayStation purchases, amongst other improper purchases. These breaches of fiduciary duty caused the corporation to become insolvent and reliant on debts to survive. Defendants also converted assets of the corporation, loan proceeds, for their own personal use. Defendants breached an individual fiduciary duty owed to Plaintiff as a minority shareholder by failing to disclose material information to Plaintiff, that Pan King had numerous other bank accounts and was applying for and receiving government loans. Finally, Defendants failed to comply with the New York Labor Law by failing to pay Plaintiff the minimum wage and overtime wages to which he was entitled.

As such, Plaintiff asks this Court to grant Plaintiff's motion for summary judgment on Plaintiff's derivative breach of fiduciary duty, individual breach of fiduciary duty, derivative conversion, and NYLL minimum wage and overtime claims because there are no issues of fact remaining for trial.

/s/Kadochnikov

_____