UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
PRATIK PATEL, individually and as a
shareholder of PAN KING, Inc. d/b/a NY Chicken & Rice;
LALIT PATEL, individually and as a partner of
PAN KING, Inc. d/b/a NY Chicken & Rice

DOCKET #
2:21-cv-00759-JS-SIL

Plaintiffs,

-against-

NODDY SINGH, ARJUN SINGH, individually and as
shareholders of PAN KING, Inc. d/b/a NY Chicken & Rice

Defendants.
-----------------------------------------------------------------X

DEFENDANTS NODDY SINGH AND ARJUN SINGH'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Dated: September 26, 2023

Respectfully submitted,
/s/ Bobby Walia
Bobby Walia
Waliabobbyesq@hotmail.com
136-40 39th Ave #304
Flushing, New York 11354
Ph.No.:718-353-4478

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii-v

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS .................................................................................................................................... 5

ARGUMENT ............................................................................................................................ 5

I. LEGAL STANDARD FOR SUMMARY JUDGMENT ......................................................... 5

II. PLAINTIFFS RECITATION OF FACTS IS INSUFFICIENT TO SHOW EIDL LOANS WERE FRAUDULENT OR USURPED A CORPORATE OPPORTUNITY ....................................................................................................................... 6

A. DEFENDANTS WERE AUTHORIZED TO SEEK OUT THE EIDL LOAN AND THE PROCEEDS WERE USED IN A MANNER SO AS TO PRESERVE THE CORPORATION ............................................................................................................... 10

III. PLAINTIFFS' NYLL CLAIMS FALL FLAT BECAUSE THEY DO NOT ADDRESS THE FEDERAL EXEMPTION AND THAT PLAINTIFF WAS PAID A FAIR MINIMUM WAGE EVEN UNDER NYLL ...................................................................... 11

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Adickes v. S.H. Kress & Co.,
398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)................................................5

African Metals Corp. v. Bullowa,
288 N.Y. 78 (N.Y. 1942)....................................................................................................9

Anderson v. Liberty Lobby, Inc,
477 U.S. 242, 255 (1986)...................................................................................................6

Andre v. Pomeroy,
35 N.Y.2d 361 (1974)........................................................................................................5

Ashcroft v. Iqbal,
556 U.S. 662 (2009)...........................................................................................................6

Baker's Aid v. Hussmann Food-service Co.,
730 F. Supp. 1209, 1213 (E.D.N.Y.1990).......................................................................11

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)...........................................................................................................6

Broderick v. Blanton,
59 N.Y.S.2d 136 (Sup.Ct. 1945).......................................................................................9

Brown v. Whitcraft, 2008 WL 2066929,
4 (N.D.Tex. 2008) .............................................................................................................8

Carlton v. Mystic Transp., Inc.,
202 F.3d 129, 134 (2d Cir.2000).......................................................................................6

Elma RT and Nagykoros Canning Factory RT v. Landesmann Int'l Marketing Corp.,
2000 WL 297197, *3 (S.D.N.Y. March 22, 2000)..........................................................11

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,

565 F.3d 200, 207 (5th Cir. 2009)……………………………………………………………..8

*Gale v. Int'l Bus. Machs. Corp.*,

9 A.D.3d 446, 447 (2d Dep't 2004)…………………………………………………………….7

*Gamero v. Koodo Sushi Corp.*,

272 F. Supp. 3d 481, 510 n.13 (S.D.N.Y. 2017)………………………..……………..13

*Graham v. Long Island R.R.*,

230 F.3d 34, 38. (2d Cir. 2000)…………………………………………………….…..…..6

*Hanna v. Plumer*

380 U.S. 460 (1965)……………………………………………………………………….12

*Howard v. Sun Oil Co.*,

404 F.2d 596, 601 (5th Cir. 1968)……………………………………………………….8

*Meese v. Miller*,

79 A.D.2d 237, 436 N.Y.S.2d 496, 500 [N.Y.A.D.1981])………………..………..…..……11

*Mega Life and Health Ins. Co. v. Superior Court*,

172 Cal.App.4th 1522, 92 Cal.Rptr.3d 399 (Cal. App. 4th Dist. 2009)………..….…….7

*Melder v. Morris*,

27 F.3d 1097, 1102 (5th Cir. 1994)……………………………………..……………....8

*Natelson v. A.B.L. Holding Co.*,

260 N.Y. 233,183 N.E. 373 (1932)…………………………………..…………..…..…9

*Nathenson v. Zonagen Inc.*,

267 F.3d 400, 419-20 (5th Cir. 2001)…………………………………..………..……..8

*Peters v. Metro. Life Ins. Co.*,

164 F.Supp.2d 830, 836 (S.D.Miss.2001)…………………………………..……..…..8

*Quaid v. Ratkowsky,*

*183 App. Div. 428 (N.Y. App. Div. 1918)*.................................................................................9

*Quartararo v. J. Kings Food Serv. Prof'ls,*

17-CV-7390 (RRM) (E.D.N.Y. Mar. 31, 2021)..................................................................13

*Rodriguez v. City of New York,*

72 F.3d 1051, 1060-1061 (2d Cir.1995) ...............................................................................5

*Schwartz v. Capital Liquidators, Inc.,*

984 F.2d 53, 54-55 (2d Cir.1993)........................................................................................11

*Sologub v. City of New York,*

202 F.3d 175, 178 (2d Cir.2000)...........................................................................................6

*United States ex rel. Williams v. Bell Helicopter Textron Inc.,*

417 F.3d 450, 453 (5th Cir. 2005).........................................................................................8

*Vigilant Ins. Co. of America v. Housing Auth. of City of El Paso, Texas, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 [1995]*...................................................................................11

*Viola v. Philips Med. Sys. Of N. Am.,*

42 F.3d 712, 716 (2d Cir. 1994)............................................................................................5

*Walkovsky v. Carlton*

223 N.E.2d 6, 276 N.Y.S.2d 585, 18 N.Y.2d 414 (1966)......................................................9

*Weisser v. Mursam Shoe Corp.,*

127 F.2d 344 (2d Cir. 1942)..................................................................................................9

*Williams v. Bell Helicopter Textron Inc.,*

417 F.3d 450, 453 (5th Cir. 2005).........................................................................................8

*Williams v. WMX Techs., Inc.,*

112 F.3d 175, 177 (5th Cir. 1997).........................................................................................8

**Statutes and Other Authorities**

**Rule 9 (b) of the Federal Rules of Civil Procedure**..............................................................1,7

54 Harv.L.Rev. 1191, 1197-99 (1941)..................................................................................9

cf. Restatement (Second), Agency § 393, Comment b (1958)..............................................9

29 U.S.C.A. § 213 (a) (1) .....................................................................................................12

29 U.S.C. § 206....................................................................................................................12

Fair Labor Standards Act of 1938 ......................................................................................12

Fed. R. Civ. P. 56...................................................................................................................5

N.Y. Labor Law § 195 (1) ...................................................................................................13

N.Y. Labor Law § 198 .........................................................................................................13

N.Y. Labor Law 651(5)(c) ...................................................................................................13

Rules Enabling Act...............................................................................................................12

CPLR §3212(b).......................................................................................................................1

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Defendants Noddy Singh and Arjun Singh ("Singhs") (collectively, "Defendants") in opposition to Plaintiff Pratik Patel's ("Patel" or "Plaintiff") motion for an order granting Plaintiffs summary judgment against Defendants, together with such other and further relief as the Court deems just and proper.

Plaintiffs start their motion by violating this Court's Order which clearly stated the parties' opening and opposition briefs shall not exceed 20 pages, plaintiffs who are making up their own rules decide to put in a twenty-three (23) page brief. This has been an ongoing pattern of conduct which has been repeated again and again. Plaintiffs discontinued the case on behalf of Lalit Patel because he has no case, submitted a derivative complaint without a verification, misaligned the corporate entity as a plaintiff, amended their complaint after several years to include labor law claims. Now Plaintiffs violate the Court Order by submitting a baseless twenty-three (23) page brief which ignores salient facts and cites cases which have no similarity to the facts of this case. The arguments are so disjointed from the facts of this case that it takes little effort to unravel them and reveal them for the *ad hoc* creations that they are. Plaintiffs do not bother to annex a copy of the pleadings even though their arguments are fundamentally based upon arguments sounding in fraud. Their pleading are subject to the strict pleading requirements of Rule 9 (b) of the Federal Rules of Civil Procedure. The complaint has to be examined to see whether it plausibly states a claim for relief. They argue that State standards should apply but fail to follow CPLR §3212(b), by failing to annex a copy of their pleadings. Plaintiffs asserts a claim for breach of fiduciary duty the precise nature of which is fraud. Plaintiffs allege defendants took out an EIDL loan and plaintiffs never received any proceeds from this loan and defendants usurped a corporate opportunity for the benefit of the defendants.

The Plaintiff wasn't even aware of the fact that a EIDL loan had been taken out in Defendants personal

1

capacity because he had disavowed any affiliation with the corporate entity and left on his own accord. The EIDL loan couldn't have been the cause of Plaintiffs injury because he didn't even know it existed. This complaint was filed by Plaintiff without even knowing the EIDL loan existed and subsequently amended to add allegations sounding in fraud with respect to the EIDL loan. There is no causation for any harm suffered by the Plaintiff with respect to the EIDL loan. The reason Plaintiff didn't know about the loan is because he breached the shareholder agreement by quitting without notice, and now seeks summary judgment because he didn't know about the loan due to his own conduct. Conduct which harmed the corporate entity and the defendants. Defendants had to close the location because the lease was under Patel's name. At the time Patel left his reasoning was that he was not making enough money. By leaving he caused the corporate entity to lose even more money, and he took away any opportunity for financial viability by leaving defendants and the corporate entity to fend for themselves. Now after making the conditions for seeking the loan ripe, Plaintiff complains about not being given proceeds from the loan, a loan for which he didn't give a personal guarantee, didn't even know the existence of, and the necessity for which he created. It is pure speculation to posit that a corporate opportunity was lost when the loan proceeds were loaned to defendants given the dire state of the corporation. Plaintiffs fail to show a causal connection between the loan and any lost corporate opportunity.

Plaintiffs try to characterize loans taken by the defendants from the corporation as commingling of funds. Such characterization is unfounded and baseless because the plaintiffs have not shown that at the time these loans were taken, they were illegitimate. Plaintiffs fail to demonstrate that at the time, place, and location these loans were taken they were in fact fraudulent. The memo of the checks, as conceded by the plaintiffs had the words "loan" and "salary" written on them which point to the fact that a legitimate business purpose was being undertaken. For any expenses taken for personal items, after Patel left, it has not been shown either that this money was owed to defendants by the corporation or that the corporation has been reimbursed for the items at issue. Plaintiffs produce checks which

were provided to them without making the *prima facie* showing. The checks from Bethpage Federal Credit Union are from a personal account and Plaintiffs erroneously cite to these transactions as commingling of funds. Exhibit 9 reveals a 7-11 charge for $7.98, Menufy.com charge for $89.50, Facebook charge for $218.41, Geico charge for $158.17, Playstation charge for $65.16, nothing has been shown to demonstrate that these transactions were made for personal expenses and not for corporate purpose. Furthermore, defendants are shareholders and subsequently became corporate officers, plaintiffs have not made the requisite showing of dominion and control, whether defendants were "sole officers, directors and shareholders"; whether they "made all corporate decisions and controlled all corporate activities"; and whether the property from which the corporation operated was owned by the individual defendants, none of this applies because for a period of time Patel was an integral and necessary part of the corporation. Plaintiffs fail to show defendants were sole officers directors and shareholders to hold them individually responsible, they don't even show that these funds were not for corporate purpose, instead simply labelling them as commingling of funds. For instance, the corporation needs food and inventory which defendants brought, requiring a vehicle, which requires insurance. Plaintiffs fail to explain how any of the charges are to be considered commingling of funds. Menufy is a delivery service used by the restaurant. The total amount of the charges is for the nominal amount of $539.22, this amount is so nominal that it doesn't amount to threshold required to show commingling of funds with intent to defraud the company. Patel who took tips for cash and cash to compensate himself should explain his conduct before accusing defendants of commingling funds. Plaintiffs have not demonstrated that the funds taken undercapitalized the company making it heavily reliant on debts, as the company as admitted by plaintiffs was losing money and that is the reason Patel left the company. Given Patel's departure there is a question of fact as to whether defendants exercised "unauthorized dominion and control" in getting a grant for the loans. At the time the loans were granted Patel had no possessory right in seeking the loans as the loans were sought on behalf of the company and Patel had relinquished all affiliation with the

company. At the very least these are questions of fact which must be resolved. Since the company was losing money, failed to turn a profit, plaintiffs have not shown rebranding it as a ghost kitchen was a not a good strategic alternative. Plaintiffs fail to causally demonstrate the dire financial condition of the company was caused by the loan to defendants and rebranding. If anything, defendants saved the company from declaring bankruptcy because they rebranded the company and took out loans for which they are personally liable. Plaintiff's application for relief is baseless and meritless, failing to demonstrate that defendants had exclusive control, funds were not for legitimate purpose and the corporation being defunct was not saved from bankruptcy by the alternate strategy employed by defendants. Plaintiffs further contend that they have a right to be informed about the loans, after Patel disavowed all affiliation, moved out of state, failed to leave any form of contact, other than an e-mail. His claims that he wanted to be informed about the loans are fictitious. On April 5, 2021, and March 14, 2023 a corporate meeting was held, Patel didn't attend either meeting even after being duly informed. Had Patel attended these meetings, he would have been notified of the EIDL loan and could have signed on to guarantee the same in his individual capacity. Given Patel's conduct and statements prior to leaving the company it is almost certain that he would have never signed to take the loans in his individual capacity, so he cannot be heard to complain about the same. Given Patel's departure defendants did what was feasible and correct for the company's survival. There was no conversion or unauthorized assumption and exercise of the right of ownership over goods belonging to another when defendants took out EIDL loans and then the corporation loaned the money to the defendants. Plaintiffs fail to demonstrate that the loan which belonged to the company was wrongly loaned to the defendants.

Plaintiffs try to enforce New York Labor Law (hereinafter "NYLL") standards in federal court, having no federal claim for the same. However even under NYLL these claims fail. Patel fixed his own hours, set his own schedule, these facts were proven and shown by way of texts and alone are sufficient to defeat plaintiffs' claims that defendants set Plaintiffs pay and schedule. Plaintiffs'

calculations are flawed because they do not take into account that Patel was a food service employee, misstate the number of hours worked, and fail to address why this court should employ NYLL standards over federal standards? Patel was in charge of record keeping requirements and was responsible for his wages. Plaintiffs fail to demonstrate that the wages given to Patel were set by defendants, Plaintiffs fail to demonstrate that scheduling for Patel was done by defendants. As a result their motion fails.

## FACTS

For a recitation of the salient facts surrounding, the Court is respectfully referred to the Declaration of Noddy Singh,("Noddy Dec.").

## ARGUMENT

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment should only be granted where there are no triable issues of fact. See Andre v. Pomeroy, 35 N.Y.2d 361 (1974). Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrate both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. See Viola v. Philips Med. Sys. Of N. Am., 42 F.3d 712, 716 (2d Cir. 1994). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-1061 (2d Cir.1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d

142 (1970)"In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 255 (1986); Graham v. Long Island R.R., 230 F.3d 34, 38. (2d Cir. 2000) "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir.2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised based on the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir.2000).

## II. PLAINTIFFS RECITATION OF FACTS IS INSUFFICIENT TO SHOW EIDL LOANS WERE FRAUDULENT OR USURPED A CORPORATE OPPORTUNITY

Plaintiff leaves out in his recitation of facts when precisely he became aware of the fact that an EIDL loan was taken out by defendants on behalf of the corporation. This omission is critical to the issue of causation, as plaintiff has asserted that defendants breached their duty of care and usurped a corporate opportunity. He does note that he stopped working in December of 2019, however, he fails to recite any facts regarding contacts he had with the defendants or the corporation after he left. "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662 (2009). Although " legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). As such it must be presumed, giving defendants every fair inference that there were no contacts between Patel, Defendants, or the corporation after he left. Since this is a fair inference, Plaintiffs cannot make out causation, it is not even plead in the complaint, and plaintiffs fail to annex a copy of said complaint. Nowhere in the complaint does it state the exclusion to be included in the EIDL loan

application caused Plaintiffs' injury. The Plaintiff had no idea an EIDL loan was taken out, for him to complain that a breach occurred which he just found out about at some unknown time which caused him injury is a claim so uncertain that any claim of damage from this alleged breach cannot be calculated with any degree of certainty. "[i]f the plaintiff did not see any of these statements, they could not have been the cause of [her] injury, there being no connection between the deceptive act and the plaintiff's injury." Gale v. Int'l Bus. Machs. Corp., 9 A.D.3d 446, 447 (2d Dep't 2004). Plaintiffs complaint merely alludes to being "excluded" from the decision for applying for the EIDL loan. After leaving and disavowing all affiliation with the corporation plaintiff having failed to see the EIDL loan application, not having any part of it cannot claim that he was injured as a result of this filing. The facts recited fail to state when Patel became aware of the EIDL loan application, without stating when Patel became aware he cannot state any breach caused him harm as the causal connection between the breach and harm has not been established due to Plaintiffs failure to set forth when exactly he became aware that an EIDL application was filed. Plaintiffs didn't plead causation between the EIDL application and any harm caused. In Gale plaintiff pointed to particular misleading statements by IBM regarding the reliability of the IBM Deskstar 75GYP, where his hard drive failed and led to data failure, however, he did not state in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive. So the statements were not the cause of the injury. Plaintiff's arguments are fundamentally based upon arguments sounding in fraud. Their pleading is subject to the strict pleading requirements of Rule 9 (b) of the Federal Rules of Civil Procedure. The complaint has to be examined to see whether it plausibly states a claim for relief. The elements of a cause of action for fraud are well established: 1.) a misrepresentation or actionable concealment of fact; 2.) knowledge of falsity or the duty of disclosure; 3.) intent to defraud or induce reliance; and 4) actual reliance by the plaintiff. Mega Life and Health Ins. Co. v. Superior Court, 172 Cal.App.4th 1522, 92 Cal.Rptr.3d 399 (Cal. App. 4th Dist. 2009). Plaintiffs move for breach of fiduciary duty on a

claim premised on fraud, fail to demonstrate or cite any facts pertaining to knowledge by Patel about the loan, intent by the defendants to defraud the plaintiff, and actual reliance by the plaintiff. It stands to reason that plaintiff could not have actually relied on something which he did not know occurred. In the present case, Plaintiffs' claims are premised on allegations of fraud and the pleadings are therefore subject to the heightened pleading standard of Rule 9(b). Brown v. Whitcraft, 2008 WL 2066929, * 4 (N.D.Tex. 2008) citing Peters v. Metro. Life Ins. Co., 164 F.Supp.2d 830, 836 (S.D.Miss.2001) ("Rule 9(b) also applies to a claim for breach of fiduciary duty when the claimed breach rests upon the same allegations as a fraud claim."). Rule 9(b) of the Federal Rules of Civil Procedure provides that in order to state a claim for fraud in federal court, the plaintiff must state with particularity the circumstances constituting the fraud. See FED. R. CIV. P. 9(b); United States ex rel. Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 453 (5th Cir. 2005). In this Circuit, interpretation of Rule 9(b) is strict, requiring the plaintiff to " specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir. 2009) (quoting Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997)). At a minimum, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) (quoting WMX Techs., 112 F.3d at 179) "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." Howard v. Sun Oil Co., 404 F.2d 596, 601 (5th Cir. 1968); see, Nathenson v. Zonagen Inc., 267 F.3d 400, 419-20 (5th Cir. 2001). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth specific facts supporting an inference of fraud." Id. (emphasis in original). If a complaint fails to meet the pleading

requirements of Rule 9(b), dismissal is proper.

Plaintiffs fail to recite relevant facts, fail to annex a copy of the pleadings, a review of which reveals causation is not properly plead, the application for summary judgment should be denied. There is nothing in the record to support a corporate opportunity was usurped when the EIDL loan was taken out without the knowledge of Patel. Considering the dire financial condition of the company it was the right thing to do and defendants acted to take steps to preserve the corporation. The duty not to compete, like the duty to offer opportunities to the corporation, is measured by the circumstances of each case. There is no evidence in the record suggesting that the corporation has been harmed by the EIDL application or the subsequent loan to defendants. See, e.g., Broderick v. Blanton, 59 N.Y.S.2d 136 (Sup.Ct. 1945); Note, Fiduciary Duty of Officers and Directors Not to Compete With the Corporation, 54 Harv.L.Rev. 1191, 1197-99 (1941); cf. Restatement (Second), Agency § 393, Comment b (1958). Plaintiffs fail to show any causal link between the loan and alleged harm caused. Given Patel's departure there is a question of fact as to whether defendants exercised "unauthorized dominion and control" in getting a grant for the loans. Walkovsky v. Carlton 223 N.E.2d 6,276 N.Y.S.2d 585,18 N.Y.2d 414 (1966) is a leading case on piercing the corporate veil. The court in that case held that a plaintiff needs to prove that a shareholder used the corporation as his agent to conduct business in an individual capacity. A court will pierce the corporate veil when it finds that the corporation is an agent of its shareholder, and will hold the principal vicariously liable, due to the respondeat superior doctrine., the stockholder would be personally liable if the claim that the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends. See African Metals Corp. v. Bullowa, 288 N.Y. 78, 85, 41 N.E.2d 366, 469.). (See, e.g., Natelson v. A.B.L. Holding Co., 260 N.Y. 233, 183 N.E. 373, supra; Quaid v. Ratkowsky, 224 N.Y. 624, 121 N.E. 887, supra; Weisser v. Mursam Shoe Corp., 2 Cir., 127 F.2d 344, 145 A.L.R. 467, supra.) Either the stockholder is conducting the business in his individual capacity or

he is not. If he is, he will be liable; if he is not, then it does not matter insofar as his personal liability is concerned. Here nothing in the complaint alleges that the corporation is a dummy corporation or that the corporate veil should be pierced, yet Plaintiffs move to hold Defendants who were shareholders responsible without making the requisite showing. Plaintiffs would be hard pressed to claim that the corporate entity was a sham because Patel acted and believed himself to be president of the corporation, a fact left out by the plaintiffs. Plaintiffs produce checks which were provided to them without making the *prima facie* showing. The checks from Bethpage Federal Credit Union are from a personal account and Plaintiffs erroneously cite to these transactions as commingling of funds. Exhibit 9 reveals a 7-11 charge for $7.98, Menufy.com charge for $89.50, facebook charge for $218.41, geico charge for $158.17, Playstation charge for $65.16, nothing has been shown to demonstrate that these transactions were made for personal expenses and not for corporate purpose. In Jiaxing Globallion Import & Export Co. v. Argington, Inc. the amount in dispute is for $554,526 where a CPA was hired to explain there was money owed to the corporation for loans, and other funds were taken for personal gains, nothing of the sort has been done here to show that the nominal amount at question was not for legitimate business purposes. Patel has unequivocally stated that he did not see defendants engage in any fraud, and when showed bank statements could not identify any illegitimate purposes. Defendants did not allow the corporation to become undercapitalized as the business was already losing money, was heavily in debt, owed money to the defendants, was caused to fall further into debt due to the abrupt departure of Patel. Plaintiffs fail to establish any facts to show the financial standing of the corporation before the loan was granted, and regardless of the financial condition, the money owed to the corporation was not the sole obligation of the defendants, as such summary judgment should be denied.

**A. DEFENDANTS WERE AUTHORIZED TO SEEK OUT THE EIDL LOAN AND THE PROCEEDS WERE USED IN A MANNER SO AS TO PRESERVE THE CORPORATION**

"Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54-55 (2d Cir.1993) (quoting Meese v. Miller, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 [N.Y.A.D.1981]). "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Elma RT and Nagykoros Canning Factory RT v. Landesmann Int'l Marketing Corp., 2000 WL 297197, *3 (S.D.N.Y. March 22, 2000) (citing Vigilant Ins. Co. of America v. Housing Auth. of City of El Paso, Texas, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 [1995]); see also Baker's Aid v. Hussmann Food-service Co., 730 F. Supp. 1209, 1213 (E.D.N.Y.1990). "The test for conversion is whether a party exercises dominion or actually interferes with the property to the exclusion or in defiance of the plaintiff's rights." Id. at 500.  Given Patel's departure there is a question of fact as to whether defendants exercised "unauthorized dominion and control" in getting a grant for the loans.  At the time the loans were granted Patel had no possessory right in seeking the loans as the loans were sought on behalf of the company and Patel had relinquished all affiliation with the company.  At the very least these are questions of fact which must be resolved.  Plaintiffs fail to demonstrate who if anyone else had superior possessory rights to apply for the loan given that Defendants held a combine 75% of the total shares.  Patel could not have stopped defendants from seeking the loans since he only held 25% of the shares.  Any argument that defendants did not have authority to seek the loan fails, what they decided to do with the proceeds was a matter of business judgment and cannot be summarily decided.

### III. PLAINTIFFS' NYLL CLAIMS FALL FLAT BECAUSE THEY DO NOT ADDRESS THE FEDERAL EXEMPTION AND THAT PLAINTIFF WAS PAID A FAIR MINIMUM WAGE EVEN UNDER NYLL

Federal courts when reviewing Fair Labor Standards Act are bound to accept this exemption as part of their review. See Section 13 (a) (1) of the Act, 29 U.S.C.A. § 213 (a) (1), The FLSA requires employers to pay overtime compensation to most employees who work more than 40 hours in a week, while certain employees are "exempt" from the overtime pay requirement. 29 U.S.C. § 206. An employee is exempt as a "bona fide executive" if the employee meets three tests: (1) the employee is paid a "predetermined and fixed salary" (salary basis test); (2) the salary exceeds a specified amount (salary level test); and (3) the employee regularly performs certain job responsibilities (duties test). See 29 U.S.C. 213(a)(1); 84 Fed. Reg. 51230. Here all three criteria are met with respect to Patel. He had a preset salary which according to him was $550 exceeding the $455 per week requirement. He not only hired and fired employees, directed their duties, cashed out, set schedules, paid their salaries, maintained inventory, independently decided how to manage the day to day operation of Pan King, Inc. Plaintiff attempts to skirt the Federal rules by making State Labor Law claims only because these claims are exempt under Federal standards. Under *Hanna v. Plumer* and its progeny, given the procedural nature of labor law claims, federal law and federal rules of civil procedure should prevail in federal court. Since the federal rules are directly on point Plaintiffs were required to show why the federal exemption should not apply to this case, because as much is mandated by the Rules Enabling Act and *Hanna*, they don't even address the issue, as such their motion must be denied. So the reality that under Fair Labor Standards Act Plaintiffs were paid a fair wage is not considered as part of Plaintiffs' motion. Even under State Labor Law standards being a front-end food services employee the tipped minimum wage was $7.50 per hour in house pay and a tip credit of $3.50, plaintiffs calculations use a higher pay rate and do not consider that Patel being a food service employee was given the tipped minimum wage. They don't even state how much in tips Patel received through-out his employment, or how much cash he took for compensation. Not even an approximate amount of cash taken by Patel is mentioned and yet Plaintiffs claim they were not paid minimum wage. Since

12

an accounting of the cash taken by Patel is lacking it cannot be determined with any degree of certainty what the total amount of compensation received by Patel was. Plaintiffs come up with hours worked by Patel which are disputed by Patel himself. Patel admitted he worked a maximum of 60 hours every week. He admitted there were days he took off, or didn't show up entirely. His NYLL wages not knowing how much in cash he took at a minimum work out to &7.50 x 40=$300 plus overtime of 20 hours (1 1/2x) which amounts to $11.25x20=$225 for a total of $525. NYLL compliance was the responsibility of the Patel. Moreover, Plaintiff unequivocally testified that he was paid minimum wage and the analysis above supports the same, this is a complete defense to liability. See N.Y. Lab. Law § 198 ("In any action ... to recover damages for violation of [Section 195], it shall be an affirmative defense that ... the employer made complete and timely payment of all wages due." See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 510 n.13 (S.D.N.Y. 2017), ("The NYLL's annual wage-notice requirement, then, was a right without a remedy.") aff'd 752 F. App'x 33 (2d Cir. 2018); see also Quartararo v. J. Kings Food Serv. Prof'ls, 2021 U.S. Dist. LEXIS 63648, at *41, 2021 WL 1209716 (E.D.N.Y. Mar. 31, 2021). Stated differently, there is no cause of action based on an employer's failure to provide an employee with an annual wage notice.

## Conclusion

For the reasons stated above Plaintiffs' motion for summary judgment should be denied in it's entirety. Plaintiff's claim under the NYLL§ §195 (1), 198, 652 should be denied, since as demonstrated Plaintiff was paid a fair minimum wage and admitted as much under Federal and State standards. Plaintiffs don't address why Federal standards should not prevail in Federal Court. All other arguments lack merit and at the very least raise triable issues of fact.